Richard WOODARD III Appellant,

v.

COMMONWEALTH OF KENTUCKY Appellee.

and

Lori M. FRANKLIN Appellant,

v.

COMMONWEALTH OF KENTUCKY Appellee.

Nos. 2005–SC–000411–MR, 2005–SC–000130–MR.

Supreme Court of Kentucky.

April 19, 2007.

Karen Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant, Richard Woodard, III.

Linda Roberts Horsman, Department of Public Advocacy, Frankfort, Counsel for Appellant, Lori M. Franklin.

Gregory D. Stumbo, Attorney General, David W. Barr, Assistant Attorney General, Office of Attorney General, Office of Criminal Appeals, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice
NOBLE.

Richard Woodard, III, was charged in two indictments with thirty-one sex crimes and four counts of Complicity to Use of a Minor in a Sexual Performance, involving four victims under the age of sixteen. His girlfriend and co-defendant, Lori Franklin, was charged in two indictments with twenty sex crimes and three counts of Use of a Minor in a Sexual Performance.

Woodard was acquitted on seven sex crimes, convicted of twenty-four sex crimes and convicted of all four complicity crimes. In a somewhat unusual judgment,

he was sentenced to ten years on one count of Rape in the Second Degree, ten years on one count of Sodomy in the Second Degree, and twenty years on one count of Complicity to Use of a Minor in a Sexual Performance, all to run consecutively for a total of forty years. The convictions on all the other counts were run concurrently with the forty year sentence.

Franklin was convicted of twenty sex offenses and three counts of Use of a Minor in a Sexual Performance. The trial court sentenced her to twenty years each on two of the Use–of–a–Minor counts, to run consecutively for a total of forty years, with that forty year sentence to run concurrently with all other sentences for a total of forty years to serve.

Woodard and Franklin appeal to this Court as a matter of right. They appealed separately and their cases have not been joined. However, because they were tried together, their appeals to this Court were perfected at the same time. Some of their issues on appeal are the same while others are specific to Franklin. Consequently, their appeals are addressed in a single opinion.

## I. Background

Woodard and Franklin ran a karate school which included minor girls as students. The victims, all of whom were students of the Appellants, are identified as L.M., R.H., A.T., and L.A. Testimony indicates the victims were all under the age of 16 when the alleged events occurred. On occasion, students would stay in the Woodard/Franklin home the night before a karate tournament. Most of the crimes are alleged to have occurred during these sleepovers. L.M. actually lived with the Appellants for a period of time after Franklin sought and obtained custody following allegations that L.M.'s mother was abusing her.

L.M. began taking karate classes at age eleven. She claimed that the Appellants began making sexual advances to her and having sexual intercourse in front of her when she was around age 12. The Appellants allegedly told her that at age 13, African custom allowed a girl to marry through a ceremony called "jumping the broom." She and the two Appellants "jumped the broom," which supposedly made her Woodard's second wife. He then had intercourse with her, and they performed oral sex on each other in Franklin's presence. Franklin fondled her and sucked her breasts. L.M. claims that on another occasion victim R.H. and another student performed oral sex on each other, and Franklin performed oral sex on R.H. in her presence. L.M. saw Woodard have anal intercourse with R.H. On yet other occasions, Franklin performed oral sex on Woodard in L.M.'s presence. She also observed Franklin and victim A.T. perform oral sex on Woodard.

R.H. claimed that she "jumped the broom" with Woodard at age 13, and was subjected to "one big orgy" involving Woodard, Franklin, L.M. and two other girls. Everyone participated and watched each other. Woodard had sexual intercourse with the three girls. Franklin and L.M. performed oral sex on Woodard. L.M. performed oral sex on R.H. while Franklin sucked her breasts. Events such as this happened more than once.

L.A. claimed she spent the night before a tournament with Woodard and Franklin, and was made to sleep in Woodard's bedroom. There, Franklin fondled herself and Woodard had sexual intercourse with L.A. three times, and performed oral sex on her while Franklin watched. L.A. performed oral sex on Woodard while Franklin watched. Events such as these happened on at least three other occasions.

The fourth girl, A.T., began karate study at age seven, and "jumped the broom" at age thirteen. Woodard had sexual intercourse with her while Franklin watched. On other occasions, A.T. and Woodard performed oral sex while Franklin watched.

## II. Analysis

### A. Directed Verdict

■ Both Appellants claim they were entitled to a directed verdict on the complicity charges of Use of a Minor in a Sexual Performance because they were charged with other crimes as participants. They reason that they could not participate and also be an "audience" within the meaning of KRS 531.300(4)—(6) and 531.310(1) and (2)(b), which state as follows:

KRS 531.300

(4) "Sexual conduct by a minor" means:
  (a) Acts of masturbation, homosexuality, lesbianism, bestiality, sexual intercourse, or deviant sexual intercourse, actual or simulated;
  (b) Physical contact with, or willful or intentional exhibition of the genitals;
  (c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or
  (d) The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, photograph or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family;
(5) "Performance" means any play, motion picture, photograph, or dance. Performance also means any other visual representation exhibited before an audience;
(6) "Sexual performance" means any performance or part thereof which includes sexual conduct by a minor; . . . .

KRS 531.310

(1) A person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance.

(2) Use of a minor in a sexual performance is:

  . . .

  (b) A Class B felony if the minor so used is less than sixteen (16) years old at the time the minor engages in the prohibited activity.

The Appellants claim that KRS Chapter 531 is by its title aimed at pornographic media, such as theatre or film, and thereby excludes a person who participates in the acts from being charged with Use of a Minor in a Sexual Performance.

The specific facts of this case undercut what might otherwise be a valid argument. Each of the victims committed sex acts at the urging of Woodard or Franklin while one or the other, or other children, watched. The fact that each of them may also have participated throughout the acts in no way negates the voyeuristic aspect of watching when not actively engaged. The plain language of KRS 531.300(5) defines performance as not only a play, motion picture, photograph or dance, but also "any other visual representation" exhibited before an "audience."

Clearly, common sense dictates that there can be an audience of one; in this case there was often more than one. Appellants urge this Court to read *Allen v. Commonwealth,* 997 S.W.2d 483 (Ky.App. 1999), to say that if one participates in a

sex act with a child that he or she can not also be an "audience." That is not the holding of the case. Admitting that *Allen* is a fact-specific case, the Court of Appeals merely found that the minor involved did more than simply exhibit herself to each customer; she actively sought to, and did, commit prostitution. Here, in addition to committing sex acts, each Appellant also watched sex acts performed by other people. The watching was obviously for a prurient purpose. This is the essence of what pornography is designed to do. Under the facts of this case, "an audience may consist of one person, such as the accused herein." *Alcorn v. Commonwealth*, 910 S.W.2d 716 (Ky.App.1995). Consequently, the Appellants were not entitled to a directed verdict, and the trial court is affirmed on this issue.

## B. Double Jeopardy

■ Both Appellants claim they were placed in double jeopardy when they were charged with Sodomy and Rape (in Franklin's case, Complicity) and with Use of a Minor in a Sexual Performance, claiming the performances in question were the acts of rape or sodomy. In fact, there were additional acts performed by the children on each other. This issue is not preserved, but the Court is urged to review it under RCr 10.26, the palpable error rule. Without requiring the rigors of such an analysis, it suffices to state that the test for determining whether a double jeopardy violation occurs is "whether the act or transaction complained of constitutes a violation of two distinct statutes, and if it does, if each statute requires proof of a fact the other does not." *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky.1997). Here, Rape and Sodomy require direct participation in the act by a defendant. Use of a Minor in a Sexual Performance requires passive observation. These are two distinct elements. The convictions for Use of a Minor in a Sexual Performance, as discussed above, were for when the Appellants were passive observers, and the Rape and Sodomy convictions were for when they were active participants. There was no double jeopardy violation.

## C. Separation of Witnesses

■ Both Appellants claim they were entitled to a mistrial because the complaining witnesses interacted with each other outside court and two rode together to the trial. The witnesses claimed they had not discussed their testimony. After consideration, the trial court determined that the witnesses had not violated the admonition. Appellants maintain that KRE 615 required more: that the court sequester the witnesses. However, the rule requires only the separation of witnesses so that they can not hear testimony in the courtroom. The rule makes separation in the courtroom mandatory, but makes no mention of witnesses interacting outside the courtroom. Obviously, the spirit of the Rule is not observed when witnesses coordinate their testimony against a party. Unfortunately, there is no practical means to ensure that this does not happen.

■ Another practical problem is how the trial court addresses accusations of collusion. Here, the witnesses all denied discussing their testimony. The trial court has discretion to take corrective measures if a witness enters the courtroom and hears testimony, ranging from holding the witness in contempt to disallowing the witness's testimony. Such violations are fairly obvious. Since the alleged collusion occurred outside the presence of the court, the most it could do is question the witnesses in an effort to ensure a fair trial. The best course is to allow the testimony subject to proper impeachment on cross

examination. That is what the trial court did, and this is not an abuse of discretion.

### D. Premature Deliberation by the Jury

█ Appellants claim they were entitled to a mistrial because the jurors violated their oath pursuant to RCr 9.70. At the close of the evidence, the jury submitted a question stating that "we" would like to see Woodard give a sample of his signature. The trial court denied the request, but defense counsel raised a question with the court concerning what a note speaking in the plural and signed "the jury" might mean. The trial court then questioned the jury as to whether they had discussed the case. No one indicated that they had. The court further inquired as to who wrote the question. One juror stated that he had been elected temporary foreman and admitted that he had written the question and signed it for the jury, but that it had come from only one juror, who alone had asked that the question be submitted to the judge. He said that no other jurors said anything. He described the event as asking a question, "not talking about it."

The trial court carefully considered the situation, and made an apt analogy to the exposure the rest of the jury would get if the question had been asked in open court, and determined that the question alone was not prejudicial. Out of the presence of the jury, the court stated,

> Yesterday, when we broke, I was considering, and I have considered over the evening, the motion that the defendants made to declare a mistrial in this matter based upon what the juror stated—and I think it was juror 104—stated that, while in the jury room waiting for time to come back, while we were trying to get the instructions ready, whether they were going to be read or whether they were going to be carried over for today,

the court got a message from the sheriff, which is of record here, which we considered. And they asked, basically, among themselves, something to the effect, "we want to go home and we want to come back the next day." Then, this one individual, [juror] 104, was designated as the spokesperson as the jury for the whole. Then it is my understanding that, as he wrote that out [request to go home for the day], a lady juror said also, "I want to see Richard [Woodard] write his signature". And what was written was, "also we would like to see Richard write his signature." I inquired of all the jurors and they said the case was not discussed, et cetera, et cetera. The juror 104 said it [the case] was not discussed. He just wrote that down and he put "we." And, well, naturally, the evidence had closed and there's no way. We couldn't do it anyway because Richard [Woodard] doesn't have to do a thing in this trial. He doesn't have to write his signature for anybody. So that was not going to be done and it would have been improper if I had granted it. So, that's past us. I had to compare a situation where if the lady raised her hand and asked the question in open court, which sometimes judges permit that, and she said, "Judge, I'd like to have Richard sign his name for us." I would have said, "Ma'am, I can't allow that to happen because the evidence is all in." There is no more evidence and its not proper procedure. So, that would be that, and I conclude that I would not discharge the jury or add a mistrial basis. So, I feel that what has taken place was much similar to this. And, for these reasons, and for that basic background, I'm not going to declare a mistrial.

Accepting the jurors' indication that no discussion about the case occurred, the

trial court did not grant a mistrial. This was not an abuse of the court's discretion.

### E. Prior Inconsistent Statement

■ Appellants claim they were denied a fair trial because they were not permitted to impeach victim L.A. with her prior inconsistent statement. At trial, L.A. testified that she was a virgin when the abuse by Appellants began. Counsel for Appellants wanted to offer evidence that she had previously stated otherwise. The trial court did not allow the impeachment, ruling that the Rape Shield Law as set forth in KRE 412 prevented it. In avowal testimony, L.A. admitted that she told an investigator that she had sexual intercourse with a boy before Appellants began abusing her. However, L.A. indicated that she did not consider that an actual act of intercourse because they stopped due to pain on entry.

The state of L.A.'s virginity is not relevant to the claims made against the Appellants. It is in fact the kind of information the Rape Shield Law is designed to exclude, so that the witness is not actually made to be a defendant at the trial. *Smith v. Commonwealth,* 566 S.W.2d 181 (Ky.App.1978). Here, however, L.A. put that status into evidence during her direct testimony. Given her avowal testimony, her statement was obviously false despite her attempt to explain it away. Consequently, the evidence must be reviewed as to whether its probative value outweighs its prejudicial effect. *Berry v. Commonwealth,* 84 S.W.3d 82 (Ky.App.2001).

The defense wanted to introduce her statement to challenge her credibility, not to prove whether she was or was not a virgin when she claimed the Appellants abused her. Her prior inconsistent statement would be relevant to show this. Given that her virginity status is not relevant to prove her claims of abuse by the Appel-

lants, this would be impeachment on a collateral matter, which is allowed while the witness is still on the stand, although not by extrinsic evidence. Richard Underwood and Glen Weissenberger, *Kentucky Evidence 2005–2006 Courtroom Manual* 321 (2005). However, the trial court must decide what is most important: allowing the impeachment or giving the protection of the Rape Shield Law. Impeachment on an irrelevant matter that would tend to put the victim on trial for matters outside the charged offenses obviates the requirements of KRE 412. Ordinarily, a motion and hearing must be held to determine the relevance of such evidence prior to offering it. While impeachment possibilities often do not arise until testimony at trial, impeachment on the irrelevant matter at issue, even though arising at trial, would violate the purpose of the Rape Shield Law. The trial court did not abuse its discretion in denying the impeachment evidence.

### F. Franklin's Separate Claims of Error

#### 1. Separate Trial

■ Franklin moved the trial court to sever counts because Woodard was charged with many more counts than she. The court acknowledged she was not charged in all counts, but determined that Franklin would not be unfairly prejudiced by the joinder because all the charges arose out of a similar series of acts or scheme, giving a specific statement of reasons as follows:

RCr 6.20 allows joinder where Defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. While it is true that Defendant Woodard is charged with more crimes in both indictments, both Defendants are charged

with similar crimes arising out of a series of acts. Both Defendants allegedly participated in sexual offenses against the same victims; the offenses occurred either at Defendants' karate studio or their home and most of the offenses occurred in the presence of both Defendants; all of the victims were students of the Defendants. The pattern of conduct toward each victim is similar, involved both Defendants to some extent, and are intertwined.

The trial court's reasons are cogent and in conformity with the law. *Ware v. Commonwealth,* 537 S.W.2d 174 (Ky.1976). The court did not abuse its discretion.

### 2. "Unsubstantiated" Investigations

 Franklin's argument appears to be that she was prejudiced when the trial court granted the Commonwealth's motion to prohibit witnesses from offering opinions that prior abuse investigations were unsubstantiated, although she also argues that this foreclosed her from determining how the witnesses' statements may have changed over time. However, defense witnesses were allowed to testify that prior investigations had been made and that no charges were filed as a result of the investigations. Wisely understanding that the term "unsubstantiated" could be interpreted to mean that the claims were false, which would be a statement of belief as to whether the claimants were telling the truth, the trial court granted the Commonwealth's motion to exclude such an opinion question. This question would have violated KRE 602, which prohibits a witness from testifying about matters on which he or she has no personal knowledge. The trial court was correct.

### 3. Cumulative Error

Franklin argues that all the alleged errors in the trial have such a negative cu-mulative effect that her convictions and sentence must be set aside. Having found no error, this argument fails.

Consequently, there being no error on the part of the trial court, the convictions and sentences of the Appellants are affirmed.

LAMBERT, C.J.; CUNNINGHAM, McANULTY, MINTON, and SCHRODER, JJ., concur.

SCOTT, J., concurs in result only.