RENDERED: AUGUST 21, 2008
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2005-SC-000862-MR

DATE 11-26-08 Ellftrowitt P.C.

DAVID A. CLARK                                                                                    APPELLANT

V.

ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE JANET P. COLEMAN, JUDGE
NO. 03-CR-000311

COMMONWEALTH OF KENTUCKY                                                     APPELLEE

**OPINION OF THE COURT BY JUSTICE SCOTT**

**AFFIRMING IN PART AND REVERSING IN PART**

Appellant, David A. Clark, appeals his conviction by a Hardin Circuit Court jury of one count of first-degree rape, seven counts of first-degree sodomy, three counts of second-degree sodomy, eight counts of incest, one count of promoting a sexual performance by a minor, two counts of using a minor in a sexual performance, one count of criminal attempt to commit a sexual performance by a minor, and two counts of criminal attempt to commit use of a minor in a sexual performance. In sum, Appellant was found guilty of twenty-five felony offenses, all of which were committed against his two biological children and the child of his live-in girlfriend. Appellant appealed his convictions as a matter of right pursuant to Ky. Const. § 110(2)(b). Thereafter, this Court designated the case for oral argument.

In his appeal, Appellant argues four allegations of error in the underlying proceeding: 1) that the trial court erred to his substantial prejudice and denied him due process when it failed to disqualify the entire jury panel because of alleged bias; 2) that his convictions for the promotion of sexual performance of a minor and use of a minor in a sexual performance violated double jeopardy; 3) that the jury instructions on two of his charges did not properly reflect the crimes charged in the indictment; and 4) that the testimony of the mother of the victims was improper.

## I.    BACKGROUND

The underlying convictions stem from a troubling series of events wherein Appellant engaged in multiple and systematic molestations of his biological children and his live-in girlfriend's son. Appellant and Susan Preston had lived together for thirteen years. Preston's child, V.P. was ten months old when they met, and their child, K.C., was born a year and a half later, with M.C. following the year after. Preston acted as mother to all the children, and, indeed, she and Appellant lived together as husband and wife, though not legally married.

According to all accounts, the relationship had been troubled throughout, with problems of physical abuse, alcohol, drug use, and infidelity. However, Preston testified that the relationship ended when she discovered that Appellant had been sexually abusing her children.[1]

In April 2003, Preston discovered some sexually explicit notes in Appellant's handwriting directing the children to perform various sex acts.

---

[1] It should be noted, however, that Preston was arrested on related charges as well. She pled guilty to complicity to sodomize and received an eight year probated sentence.

2

Preston later questioned V.P. and K.C. about the notes, and although they initially denied having any knowledge about them, the children eventually independently approached her and told her of their "secret." Preston testified that she did not approach M.C., the youngest child, because she was afraid that M.C would tell Appellant. Moreover, Preston said she was afraid of what Appellant would do to them if he found out she knew.

The day following her conversations with the children, Preston went to the police and reported that Appellant was molesting her children. Appellant was subsequently arrested, indicted and tried on thirty-two counts, eventually being found guilty of twenty-five counts, including first-degree rape, first-degree sodomy, second-degree sodomy, incest, promoting a sexual performance by a minor, use of a minor in a sexual performance, criminal attempt to commit promoting a sexual performance by a minor, and criminal attempt to commit use of a minor in a sexual performance.

Testimony at trial from Appellant's biological son, K.C., indicated that beginning around the time he was nine or ten years old, Appellant began abusing the children and made them perform sex acts on Appellant and on each other. Testimony from V.P. likewise indicated that Appellant sexually abused all of the children. V.P. recounted one incident wherein Appellant directed V.P. to simulate sexual intercourse with his sister while a pornographic movie played in the background and Appellant pleasured himself. M.C., Appellant's biological daughter, testified that Appellant began sexually abusing her when she was approximately eight years old, and that Appellant instructed her brother to perform sex acts on her and that she also observed her siblings performing sex

3

acts on Appellant. Appellant denied writing the notes and denied any abuse of the children, instead asserting that the allegations were manufactured so the family would no longer have to live with his physical abuse.

For these crimes Appellant was sentenced by the Hardin Circuit Court to life imprisonment. We now review Appellant's convictions.

## II.    ANALYSIS

### A.    Disqualification of the Jury

In his first assignment of error, Appellant argues that the trial court erred in failing to disqualify the entire jury panel based on alleged bias stemming from their contact with a member of the media. Appellant claims that by virtue of this tainted jury panel he was denied a fair and impartial jury as required by Kentucky Constitution § 11 and RCr. 9.36(1).

Prior to Appellant's trial, the Hardin Circuit Court decided the unrelated case of Commonwealth v. Heck, 04-CR-00506, which likewise involved charges of rape and sodomy. The Heck jury had recently delivered a not guilty verdict for the accused. After the Heck verdict was returned, four members of the jury panel were approached outside the courthouse by a reporter from a local newspaper who berated the jurors and told them they were wrong to acquit the accused and that if they had read her articles in the newspaper they would realize their mistake. The reporter also insinuated that evidence had been withheld from the jury and referred to various other alleged bad acts of the accused which were ostensibly not discussed at trial.

The foregoing is noteworthy in that several members of Appellant's jury pool were likewise members of the Heck jury panel. Appellant became aware of

the confrontation between the reporter and the jurors, and on the morning of his trial filed a motion to dismiss the entire jury pool. Appellant claimed the entire jury pool had been tainted due to the confrontation with the reporter and, thus, were prejudiced against acquitting another accused sex offender. The trial judge, however, denied the motion, indicating that she would go forward with empanelling a jury from the pool, but would permit counsel from both parties to call prospective jurors to the bench and question them as to any relevant matter.

Each prospective juror was asked if they had served on the Heck trial. If a juror answered in the affirmative, such juror was questioned individually at side bar to determine if the reporter's statements affected their impartiality in the present matter. Seven potential jurors who served on the Heck jury were interviewed, and all indicated that they could be impartial. Significantly, no motions were made to strike any juror for cause. While Appellant's counsel did use three peremptory challenges to remove members of the Heck jury,[2] ultimately, four Heck jurors, including one of the individuals confronted by the reporter, sat on Appellant's jury.

Although Appellant argues that the jury pool was invariably tainted by some of the members' contact with the reporter, he fails to demonstrate such bias. Indeed, Appellant offers little more than unsubstantiated speculation that the confrontation may have had some bearing on his conviction. Additionally, while it is certain that the conversation between the Heck jurors and the reporter was inappropriate, it is not an automatic indication that that the individuals

---

[2] Appellant exhausted all nine of his peremptory challenges.

5

affected were rendered incapable of fair and impartial treatment of a wholly unrelated case with entirely different evidence.

It is presumed that potential jurors are qualified to serve unless there is a showing of actual bias. Moreover, "[i]t is incumbent upon the party claiming bias or partiality to prove the point." Polk v. Commonwealth, 574 S.W.2d 335, 337 (Ky. Ct. App. 1978) (citing Watson v. Commonwealth, 433 S.W.2d 884, 887 (Ky. 1968)). Therefore, it logically follows that one must demonstrate actual bias in order to overcome the presumption of qualification. See Watson, 43 S.W.2d at 887. Here, Appellant has made no such showing.

It is elemental that every criminal defendant is entitled, as a matter of due process, to an unbiased decision by an impartial jury. Grooms v. Commonwealth, 756 S.W.2d 131, 134 (Ky. 1998); Ky. Const. § 11. However, the proper vehicle for testing this right, as ensured in RCr 9.30, is through the mechanism of voir dire. Pelfry v. Commonwealth, 842 S.W.2d 524, 525 (Ky. 1992).

Here, Appellant was presented with the opportunity to question, in voir dire, each potential juror as to whether they were able to serve impartially. All jurors answered affirmatively. Moreover, Appellant's counsel did not strike any of the Heck jurors for cause. It is well settled law that "if a litigant wishes to complain he must complain before the jury is accepted." Galliaer v. Southern Harlan Coal Co., 57 S.W.2d 645, 647 (Ky. 1932).

Since Appellant was afforded the opportunity to test the impartiality of the prospective jurors in voir dire and, in fact, did so without striking any of the jurors

for cause, and has failed to show actual bias by any of the jurors, we find no error.

**B.** **Appellant's Convictions for Promotion of a Sexual Performance with a Minor and Use of a Minor in a Sexual Performance Violate Double Jeopardy.**

Appellant next argues that his convictions for use of a minor in a sexual performance, KRS 531.310, and promotion of a sexual performance by a minor, KRS 531.320, arise from the same course of conduct and therefore violate double jeopardy. We agree.

Initially, it should be noted that Appellant's argument is unpreserved. However, we will review for palpable error, as we have held – though not without some measure of reluctance –[3] that failure to present a double jeopardy argument to the trial court should not result in allowing a conviction which

---

[3] In Baker v. Commonwealth, 922 S.W.2d 371, 374 (Ky. 1996), we noted "we have held in Sherley v. Commonwealth, Ky., 558 S.W.2d 615, 618 (1977), and Gunter v. Commonwealth, Ky., 576 S.W.2d 518, 522 (1978), that failure to object on grounds of double jeopardy does not constitute a waiver of the right to raise the issue for the first time on appeal. This view appears to be based on Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), a per curiam opinion which held that a plea of guilty after an unsuccessful plea of double jeopardy would not constitute waiver; that the merits of the double jeopardy claim should be reviewed on appeal. Menna, 423 U.S. at 62, 96 S.Ct. at 242. From Menna to Sherley and Gunter is a significant leap of logic and we now question its soundness. A principal reason for doubting the soundness of the rule, in addition to the general reasons for requiring preservation, is the difficulty of analyzing a double jeopardy claim when there is no context from the trial court. In such a circumstance, an appellate court must decide from the entire record whether double jeopardy principles have been violated on any one of multiple bases. As such, appellant's counsel is at liberty to throw every possible double jeopardy theory at the Court without having had to analyze and present such claims in the trial court. Deciding issues in such a manner is fraught with danger of error or omission and we can think of no compelling reason for such deference to double jeopardy principles. As with other rights, constitutional rights may be waived by failure to timely and properly present the issue. West v. Commonwealth, Ky., 780 S.W.2d 600, 602 (1989). Nevertheless, we will observe the Sherley rule in this case and address the merits of appellant's double jeopardy claim."

7

violates double jeopardy to stand. See, e.g. Beaty v. Commonwealth, 125 S.W.3d 196, 210 (Ky. 2003)

Here, Appellant takes specific issue with two of the six indictments under KRS Chapter 531 – counts twenty-seven (27) and twenty-nine (29) – under which he was convicted. The relevant convictions pertaining to this matter stem from a course of conduct wherein Appellant orchestrated a sexual encounter between his minor daughter, M.C., and his girlfriend's minor son, V.P. According to testimony, V.P. walked into Appellant's bedroom and witnessed M.C. lying on the floor, naked, with Appellant in the room. Appellant then nudged V.P. towards M.C. and instructed him to get on top of her. Appellant undid his pants and masturbated as he pushed V.P. up and down on top of M.C. in a motion to simulate sexual intercourse while a pornographic video played in the background. However, no penetration occurred.

For this crime, the jury convicted Appellant of use of a minor in a sexual performance, KRS 531.310, and promotion of a sexual performance by a minor, KRS 531.320. We must now determine whether these convictions violate double jeopardy.

In Commonwealth v. Burge, 947 S.W.2d 805 (Ky. 1996), this Court again adopted the federal constitutional test for double jeopardy claims as outlined in the seminal United States Supreme Court case of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), after departing from its usage for a period of time. In doing so, we noted, "we now depart from the 'same conduct' test . . . and the 'single impulse test' . . . and declare that double jeopardy issues arising out of multiple prosecutions henceforth will be

8

analyzed in accordance with the principles set forth in Blockburger[ ] and KRS 505.020." Burge, 947 S.W.2d at 811 (internal citations omitted). "The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' [sic] and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993).

Thus, under Blockburger and Dixon, we must determine whether a single course of conduct has resulted in a violation of two distinct statutes and, if so, whether each statute requires proof of an additional fact which the other does not. Blockburger, 284 U.S. at 304, 52 S.Ct. at 182. If each statute requires proof of an additional fact which the other does not, then conviction under the two statutes in question does not violate double jeopardy. See id. If, however, the exact same facts could prove the commission of two separate offenses, then the double jeopardy clause mandates that while a defendant may be prosecuted under both offenses, he may be convicted under only one of the statutes.

KRS 505.020 represents the codification of these principles by the General Assembly. It states:

> (1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:
>
> (a) One offense is included in the other, as defined in subsection (2); or
>
> (b) Inconsistent findings of fact are required to establish the commission of the offenses; or
>
> (c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted

9

by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

KRS 505.020.

At the outset, we note that KRS 531.310 and KRS 531.320 are inartfully drafted at best. KRS 531.310(1) provides that "[a] person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance." Whereas, KRS 531.320 mandates "[a] person is guilty of promoting a sexual performance by a minor when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a minor."

In order to determine if each statute requires proof of an element which the other does not, we will turn to the definitional components of the verbs articulated therein.

KRS 531.310, the so-called "use" statute, necessitates the offender "*employ, consent to, authorize* or *induce*[ ] a minor to engage in a sexual performance." (emphasis added). The definition of employ is to "make[ ] use of someone or something inactive." Merriam Webster's Collegiate Dictionary 379

10

(10th ed. 1998). The definition of consent is to "give assent or approval." Id.

Authorize is defined as "to give authority or power to," or "to approve or permit."

Webster's II New College Dictionary 76 (3rd ed. 2005). While, induce is defined

as "to lead or move by persuasion or influence," or "to bring about; cause." Id.

In Woodard v. Commonwealth, we recognized that KRS 531.300(5)

defined performance (within the context of the "use" statute) as "not only a play,

motion picture, photograph or dance, but also 'any other visual representation'

exhibited before an 'audience.'" Woodard v. Commonwealth, 219 S.W.3d 723,

727 (Ky. 2007) (quoting KRS 531.300(5)). Moreover, we likewise noted that

"[c]learly, common sense dictates that there can be an audience of one." Id.

Thus, a plain reading of the statute, with the definitional intent in mind,

connotes the conclusion that the offender of the "use" statute is one who causes

a minor to engage in a sexual act – either by complicity or active engagement –

with the purpose that the prurient act be performed before an audience.  In the

present instance, Appellant "used" the minor victims to simulate sexual

intercourse for the intended audience of himself, as he watched with prurient

purpose.  As such, Appellant's activity was resolutely violative of the statute.

Therefore, to avoid offending double jeopardy, Appellant's conviction

under KRS 531.320, the so-called "promotion" statute, must require the proof of

some fact in existence which the aforementioned statute does not (with the

reciprocal being true as well).  Again, we turn to the direct language of the statute

and the definitional component of the verbs within for guidance on the matter.

Under KRS 531.320, "[a] person is guilty of promoting a sexual

performance by a minor when, knowing the character and content thereof, he

11

*produces, directs,* or *promotes* any performance which includes sexual conduct by a minor." (emphasis added). The definition of produce is "to compose, create, or bring out by intellectual or physical effort." Merriam Webster's Collegiate Dictionary 930 (10th ed. 1998). The definition of direct is "to carry out the organizing, energizing, and supervising of" an act. Id. at 328. Additionally, KRS 531.300(7) defines "promote" as meaning "to prepare, publish, print, procure or manufacture, or to offer or agree to do the same."

Accordingly, once again noting that performance means any visual representation exhibited to an audience,[4] a person would be in violation of KRS 531.320 when they knowingly cause, create, or bring forth – either actively or through passive intellectual means – the organization or exhibition of any prurient matter involving a minor to an audience. As such, because Appellant, here, knowingly created, supervised, and organized a perverse sexual display by which he physically directed the minor children to simulate sexual intercourse, pushing V.P. up and down on M.C. while he watched and pleasured himself, Appellant clearly violated KRS 531.320.

Of import, however, is that the common course of conduct which supports both of these convictions did not require the proof of a fact in existence which the other did not. It is true that an overlap of proof does not, of its own accord, establish a double jeopardy violation. Dishman v. Commonwealth, 906 S.W.2d 335, 341 (Ky. 1998) (citing United States v. Felix, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992)). However, an inability to point to the requirement of at least one mutually exclusive fact in existence does. Although, the

_____

[4] Woodard, 219 S.W.3d at 727.

12

Commonwealth argues that KRS 531.310 requires the additional element of engaging the minor in the sexual performance, which was satisfied when Appellant pushed V.P. up and down on M.C., we are unpersuaded by this logic.

The Commonwealth asserts that the focus of the "promotion" statute is the direction of the sexual performance, while the focus of the "use" statute is the engagement in the performance. However, as the above discussion clearly demonstrates, the Commonwealth's argument points to a distinction without a difference. The "use" statute requires only that the offender either passively ("consent") or actively ("employ") facilitate a minor's participation in a visual representation of a sexual performance before an audience. Woodard, 219 S.W.3d at 728. ("Use of a Minor in a Sexual Performance requires passive observation."); KRS 531.310. And, in effect, under the facts in question, the promotion statute, KRS 531.320 prohibits the same conduct. The "promotion" statute is violated when one either actively or passively prepares, agrees, or brings forth through their efforts the visual representation of a minor in a sexual performance before an audience.

Therefore, we hold that Appellant's convictions under KRS 531.310 and KRS 531.320 violate double jeopardy as they fail the Blockburger test, representing convictions which arise out of a single course of conduct and not requiring proof of a fact which the other does not. 284 U.S. at 304, 52 S.Ct. at 102; Burge, 947 S.W.2d at 811.

In Jones v. Commonwealth, we recognized that double jeopardy prohibits the Commonwealth from "'carving out of one act or transaction two or more offenses.'" 756 S.W.2d 462, 463 (Ky. 1988) (overruled on other grounds by

13

Burge, 947 S.W.2d at 811) (quoting Milward, Kentucky Criminal Practice § 5.07 (1984)). However, we noted "the Commonwealth is permitted to carve out of a single criminal episode the most serious offense, but not to punish a single episode as multiple offenses." Id. In the circumstance where the Commonwealth has failed to make such an election and a single criminal episode gives rise to multiple convictions, the courts must do so. See id. at 463-464 (holding that when multiple convictions for robbery and receiving stolen property arose from a single criminal event, but were prosecuted as separate offenses, the Court would set the conviction for receiving stolen property aside). Generally, this is accomplished by maintaining the more severe conviction and vacating the lesser offense. See Jordan v. Commonwealth, 703 S.W.2d 870 (Ky. 1986) (vacating a conviction for theft – the lesser offense – which was part of a robbery because it violated the principle of multiple punishments for the same crime).

In the present instance, however, Appellant's convictions under KRS 531.310 and KRS 531.320 carry the same weight of punishment. In particular, both are Class B felonies by virtue of the fact that the minor(s) involved were less than sixteen years of age at the time. KRS 531.310(2)(b); KRS 531.320(2)(b). Because the facts which gave rise to these convictions arose from a single episode and each carries identical weight upon sentencing, vacating either sentence would suffice to remedy the double jeopardy violation. Thus, finding no viable distinction between Appellant's convictions under KRS 531.310 and KRS 531.320, we hereby reverse and vacate Appellant's conviction for promoting a sexual performance by a minor under KRS 531.320.

## C. Variance Between Indictment and Jury Instructions Did Not Unfairly Surprise or Prejudice Appellant.

Appellant alleges in his third assignment of error that he was convicted of two offenses – counts twenty-seven (27) and thirty (30) – which differed from the crimes charged in the indictments, in violation of RCr 6.16.[5] Appellant concedes that his argument is unpreserved for review. Thus, we will review only for palpable error. RCr 10.26.

For an error in an indictment to amount to palpable error, there must be a "manifest injustice resulting from the error" so substantial that absent the error there would be a "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." Martin v. Commonwealth, 207 S.W.3d 1, 2 (Ky. 2006) Likewise, in Robards v. Commonwealth, 419 S.W.2d 570, 573 (Ky. 1967), we noted that errors in an indictment are not strictly reviewed for technical violations, but are looked at to make sure that the defendant had fair notice and a fair trial. Indeed, RCr 6.10(3) references the idea that error or omission in an indictment shall not be grounds for reversal of a conviction if the error did not mislead a defendant to his prejudice.

Implicit in this theory is the notion that a defendant should be aware of the crimes charged against him and the evidence forthcoming so that he may prepare a defense. See Commonwealth v. McKenzie, 214 S.W.3d 306, 308 (Ky.

---

[5] RCr 6.16 states, "[t]he court may permit an indictment, information, complaint or citation to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted."

2007). Thus, "under modern rules the essential question when examining variance between the indictment and the proof is whether the defendant had fair notice and a fair trial." Johnson v. Commonwealth, 864 S.W.2d 266, 272 (Ky. 1993) (citing Robards, 419 S.W.2d 570).

In Johnson, the appellant alleged that certain variance between the indictment and the proof required reversal of his convictions. Johnson, a minor, had been charged and convicted of rape and sodomy when he engaged in nonconsensual sexual acts with a female minor who was intoxicated and unconscious at a New Year's Eve party. Arguing that since the indictment charged him of rape and sodomy by "'use of forcible compulsion' and not physical helplessness of the victim," he contended that the evidence submitted at trial varied from the indictment and thus the crime was not proven. Id. at 271. However, relying on Robards the Court reasoned that appellant had suffered no surprise or prejudice and "[t]he variance did not involve a different or additional offense." Id. at 272. In doing so the Court articulated that while the indictment should have been amended or drafted more carefully, the variance was harmless as "the defendant was fully aware of the nature and cause of the charge, and was not in the least surprised, misled or otherwise unfairly prejudiced by the variance." Id. at 273.

Here, it should be noted that the indictments on the aforementioned counts differ from their corresponding jury instructions in only one respect: the names of the victims. Count twenty-seven (27) of the indictment indicated *M.C.* as the victim of the offense of promoting a sexual performance by a minor. However, the jury instructions for the corresponding count listed the victim as

*V.P.* Likewise, count thirty (30) of the indictment named *V.P.* as the victim of criminal attempt to commit promoting a sexual performance of a minor, while the jury instructions on this count indicated *K.C.* as the victim. During a conference regarding the jury instructions at trial, the Commonwealth indicated that the jury instructions for count thirty (30) should not be V.P., but rather K.C., and recognized that the indictment should be amended. Thereafter, the trial court changed the instructions, but never entered an order amending the indictment.

In the present instance, Appellant alleges that the inconsistencies in the names indicated on the corresponding jury instructions amounted to being charged with wholly different offenses than those indicted. However, we are disinclined to agree, as we are the opinion that the error was little more than clerical in nature, and such inadvertent mistake did not affect Appellant's substantial rights, nor was he prejudiced by such mistake. Here, Appellant was not surprised or prevented from defending himself upon the offenses charged. Indeed, Appellant's defense theory at trial was that he did not sexually abuse any of the children. Thus, such theory was not altered or impinged upon. Appellant's theory remained viable regardless of which victim was listed on the count.

The variance between the indictment and the jury instructions was nothing more than the insertion of the correct set of corresponding initials for the victims of the crimes charged. As such, we find, as in Johnson, that we are affirmatively convinced that Appellant was "fully aware of the nature and cause of the charge, and was not in the least surprised, mislead or otherwise unfairly prejudiced by the variance." Johnson, 864 S.W.2d at 273.

17

However, we reiterate: the indictments should have unquestionably been formally amended by order. Failure to do so was clearly an inexpedient shortcoming on the trial court's behalf and undeniably error, albeit harmless in this instance. Such errors are easily correctable and are occurring far too frequently in the Commonwealth's trial courts. We implore the courts, therefore, to be more fastidious in their attention to detail on these matters. However, we resolutely hold that, here, the error was neither shocking nor jurisprudentially intolerable.

**D. Appellant Suffered No Prejudice from the Testimony of Former Live-In Girlfriend Despite the Lack of Notice.**

For his final assignment of error, Appellant claims the trial court erred in permitting Susan Preston to testify in violation of KRE 404, which resulted in denial of his due process rights and an unreliable sentence determination.

Preston was the long-term girlfriend and cohabitant with Appellant and the mother of all three minor victims. During trial, the Commonwealth called Preston to testify, and pursued a line of questioning wherein she was asked of the circumstances which led her to suspect Appellant of sexually abusing the children and why she did not want him to know that she had suspected him. Preston responded, "out of fear" and explained that after living with Appellant for thirteen years she knew how he acted and reacted. Preston then testified to having suffered physical abuse by Appellant on multiple occasions and that V.P. had witnessed some of these, causing her to fear Appellant. Upon hearing this testimony, Appellant's counsel objected; however, the trial judge overruled on grounds that Preston should have the right to explain her actions, with the understanding that the Commonwealth would abandon this line of questioning.

18

Appellant argues that the introduction of this testimony was in contravention to KRE 404(b), and that likewise, the Commonwealth failed to give proper notice of its intent to introduce such evidence as required under KRE 404(c). KRE 404(b) proscribes the use of evidence of other crimes, wrongs or acts to prove the character of a person to show action in conformity therewith, unless 1) offered for some other purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or 2) if so inextricably intertwined with other evidence essential to the case that separation of the two could not be accomplished without serious adverse effect on the offering party." The essence of KRE 404(b) is that "evidence of criminal conduct [or bad acts] other than that being tried, is admissible only if probative of an issue independent of character or criminal disposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character." Billings v. Commonwealth, 843 S.W.2d 890, 892 (Ky. 1992). However, under KRE 404(b)(2), the Commonwealth is allowed to present a complete and unfragmented picture of the circumstances surrounding how the crime was discovered. See Adkins v. Commonwealth, 96 S.W.3d 779, 793 (Ky. 2003) (citing Robert G. Lawson, Kentucky Evidence Law Handbook, § 2.25 at 96 (3d ed. Michie 1993); see also Major v. Commonwealth, 177 S.W.3d 700, 708 (Ky. 2005).

Here, the setting and context of the events surrounding Preston's discovery of the sexual abuse of her children, and her reasons for not contemporaneously confronting Appellant about it, were germane to the overall sequence of events surrounding the crimes and to the events which led to them

19

being reported to authorities. As such, this evidence was inextricably intertwined with other evidence critical to the case. KRE 404(b)(2).

Admittedly, it is clear from the record that the Commonwealth failed to provide adequate notice of its intent to use this bad acts evidence as required by KRE 404(c). However, in the present instance, such error was harmless, as Appellant fails to make any showing of substantial prejudice. Here, it is significant to note that Preston's testimony resulted in a mere repetition of evidence already properly placed before the jury and which had been duly considered by the trial court and counsel. At trial V.P. testified about the physical confrontations he witnessed between Appellant and Preston.

Furthermore, Appellant concedes – on multiple occasions – to the very testimony of which he now complains. In his brief to this Court, Appellant admits that his theory of defense at trial was that the charges were manufactured in order that the family would no longer have to live with him because he was physically abusive. Likewise, Appellant also testified at trial, without any objection by his counsel, that he abused Preston.

As such, the complained of testimony was cumulative in nature. Moreover, given the wealth and breadth of testimony and evidence against Appellant, and the fact that, in all likelihood, he had actual notice of the Commonwealth's intent to use such evidence, any prejudicial impact on Appellant was de minimus, and therefore harmless. See Matthews v. Commonwealth, 163 S.W.3d 11, 19 (Ky. 2005). Harmless error is not grounds for reversal on appeal. RCr 9.24.

## III. CONCLUSION

20

For the foregoing reasons, we hereby reverse and vacate Appellant's conviction for promotion of a sexual performance with a minor as violative of double jeopardy, but affirm all remaining convictions.

Minton, C.J., Abramson, Cunningham, Noble, and Schroder, JJ., concur. Venters, J., not sitting.

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601