RENDERED:  FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1387-MR

TARA K. THOMAS                                                          APPELLANT


APPEAL FROM WARREN CIRCUIT COURT
v.        HONORABLE JOE W. HENDRICKS, JR., SPECIAL JUDGE
ACTION NO. 21-CR-01268


COMMONWEALTH OF KENTUCKY                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, KAREM, AND TAYLOR, JUDGES.

EASTON, JUDGE:  The Appellant, Tara K. Thomas ("Thomas"), seeks reversal of

the final judgment of the Warren Circuit Court after a jury convicted her of

Retaliating Against a Participant in the Legal Process.  Thomas contends the circuit

court erred in admitting too much evidence for the Commonwealth, including

misuse of KRE[1] 404(b), as contrasted with too little evidence allowed for her,

---

[1] Kentucky Rules of Evidence.

depriving Thomas of the opportunity to present a complete defense. Thomas also believes the circuit court erred by amending the Indictment after the close of the evidence with a consistent instruction to the jury and failing to give an instruction for Harassing Communications as a lesser-included offense. Evaluation of this record reveals no error by the circuit court. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because of events alleged to have occurred on October 7, 2020, Thomas was charged with two counts each of Third-Degree Assault (of police officers) and Third-Degree Terroristic Threatening, with additional counts of Alcohol Intoxication, Resisting Arrest, and Harassment.[2] Because of Thomas' lack of any disqualifying criminal record, the Commonwealth offered a felony pretrial diversion to Thomas on September 20, 2021. Assistant Commonwealth Attorney, Kori Beck Bumgarner ("Bumgarner"), communicated this offer to Thomas' attorney.

---

[2] Warren District Court Case No. 20-F-01090. Because we seek to present a complete picture for both sides of this case, we will refer to court records of cases referred to by the parties during the case. Judicial notice may not be taken of Kentucky CourtNet records to present as evidence in a trial. *See Marchese v. Aebersold*, 530 S.W.3d 441 (Ky. 2017). But information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings. *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020). After the trial in this case, Thomas pled guilty to amended misdemeanor charges in Case No. 20-F-01090, which had by then resulted in an Indictment filed as Warren Circuit Court Case No. 21-CR-01096.

The diversion offer included a requirement to serve some time as an alternate sentence. Thomas reacted badly to this offer. On the night of September 20-21, 2021, Thomas sent a series of messages to Bumgarner, her husband, and her stepfather. In summary, these messages included vulgar language and declared death to Bumgarner and her two small children. Thomas was indicted on November 17, 2021.

There were delays in this case because of the identity of the victim. A special judge and a special prosecutor from other counties were appointed. Thomas' retained attorney withdrew because of a "breakdown of trust" according to Thomas. It then took more time to appoint public defenders from another office. This was needed because local public defenders worked frequently with Bumgarner.

The delays led to more time in pretrial custody for Thomas. Thomas was out on a bond for this case, but this bond was eventually revoked due to a confirmed positive drug test (methamphetamine). The special prosecutor also reported that he and his wife had received attempts at communication from Thomas, although this was not confirmed with evidence in the record. Thomas denied this. Even with the delays, the circuit court acceded to Thomas' demand that the case be tried promptly, despite the concerns of her appointed counsel.

The circuit court conducted a pretrial conference on July 29, 2022. At this pretrial conference, KRE 404(b) issues were addressed. The first day of the trial was used to select a jury. The rest of the trial took place on August 3, 2022. During the trial, the circuit court allowed Bumgarner's husband and stepfather to testify about the messages they had received, which were reported to Bumgarner. Emotional testimony described Bumgarner's reactions to the threats on the day they were received.

Thomas' defense focused on her intent. She sought to prove that she was expressing frustration with the justice system, not actual threats of harm. With each witness, her counsel pointed out that the messages contained no actual specific threat of how harm would come to Bumgarner. No witness called 911. Thomas lived an hour away. Additionally, Thomas wanted to call her mother as a witness to present evidence of Thomas' frustration. After a discussion among counsel and the circuit court for over ten minutes, Thomas decided not to call any witnesses.

At the conclusion of the evidence, the circuit court instructed the jury with respect to threats not just about Bumgarner but also about her children, although the Indictment referred only to Bumgarner by name. The jury convicted Thomas and fixed her sentence at four years. The circuit court imposed this

sentence, denying probation. The circuit court denied a new trial motion. We will develop more details of the case as we address the appeal contentions.

## STANDARD OF REVIEW

The circuit court's evidentiary rulings are reviewed for abuse of discretion. *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id.* We review legal questions *de novo.* We must determine whether the circuit court committed error in the amendment of the Indictment or in its jury instructions, including whether to instruct on a lesser included offense. *See Fields v. Commonwealth*, 219 S.W.3d 742 (Ky. 2007) (a case involving both issues).

## ANALYSIS

We will review the evidentiary issues first as they will provide context for the other decisions made by the circuit court. Thomas argues the presentation of messages sent to Bumgarner's husband and stepfather violated KRE 404. She also insists the evidence about Bumgarner's reaction to the messages was improper for the first phase of the trial and should have been limited to the sentencing phase as victim impact evidence. We start with the KRE 404 issues.

KRE 404(b) is often imprecisely referred to as a rule governing "prior bad acts." The acts offered as evidence can be contemporaneous or even after the

-5-

events at issue so long as they are offered and considered only for a proper purpose other than the character of the actor. In this case, the evidence about the messages served an important purpose other than an attack on Thomas' character.

Retaliation Against a Participant in the Legal Process occurs when someone "threatens to engage in conduct causing or intended to cause bodily injury[3] . . . [to] a participant in the legal process." KRS[4] 524.055(1). As it pertains to this case, other elements are that the threat related to Bumgarner for performing her duty as a prosecutor. KRS 524.055(1)(d), (3). These other elements were not disputed. The question was whether a threat was intended.

Just as Thomas wanted to focus on the lack of a specific physical harm threatened, the lack of any 911 call, and her physical distance from Bumgarner, the Commonwealth needed to prove that this was a true threat. If the threat was not a true threat, the communication to a government official would be protected by the First Amendment right to express opposition or frustration. *See Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003).

Under KRE 404(b), evidence of Thomas' messages to three people was relevant to her motive and intent and how real the threat was. KRS 524.055

---

[3] Of course, death is the ultimate bodily injury regardless of how it may be inflicted.

[4] Kentucky Revised Statutes.

does not actually require direct communication[5] of the threat to the victim. The fact that Thomas sent messages to people close to Bumgarner is relevant evidence of her intent to make sure Bumgarner found out about the threat.

The contemporaneous reactions by Bumgarner and the other recipients of the messages were evidence inextricably intertwined with the events of that day. The reactions were evidence of whether the threats were real and to rebut any claim by Thomas of her mistaken intention to just express frustration. When the circuit court considered the probative value of the evidence, it correctly concluded that the probative value was not substantially outweighed by the danger of unfair prejudice. KRE 403.

On the other side, Thomas wanted to introduce evidence of her level of frustration with the justice system and the Warren County Commonwealth Attorney. Thomas introduced evidence of comments made around the same time expressing her constitutionally protected criticism of the Commonwealth Attorney as it related to a case in which Thomas was the victim of a sexual offense. This more recent case added to Thomas' bad court experience when she was the victim of sex crimes at the hands of a neighbor when she was 12 years old.

---

[5] Unlike intimidation under KRS 524.040, retaliation under KRS 524.055 does not require any direct or indirect communication of a threat to the victim. Kentucky has not had the opportunity to address this question, but other states agree with this conclusion. *See, e.g.*, *Hammonds v. Maryland*, 80 A.3d 698 (Md. App. 2013).

When Thomas came forward as a child, she faced the unfortunate realities of a trial of such charges. Despite DNA evidence, people doubted Thomas. She was accused of making prior false allegations. Thomas felt more than let down by the process. It should be noted that the neighbor was convicted and sentenced to prison.[6] To this degree, Thomas was vindicated. That no doubt did not take away from the negative feelings Thomas had about the process she had experienced in the criminal justice system.

Later, as a teenager, Thomas was sexually abused by a high school teacher ("Goodpastor").[7] Unlike her prior case, this later case occurred in Warren County. This is the connection that would later lead to the threats made in the present case. Goodpastor was indicted for Third-Degree Sodomy, a Class "D" felony subject to a prison term of one to five years.

There was no trial in Goodpastor's case. His charge was amended to Second-Degree Unlawful Transaction with a Minor, also a Class "D" felony. He pled guilty. During the trial in the present case, Thomas' mother said that all that happened to Goodpastor was that he lost his job. That does not appear to be

---

[6] *Commonwealth v. Kenneth Ray Capshaw*, Monroe Circuit Court Case No. 05-CR-00063. This Court affirmed the conviction. *Capshaw v. Commonwealth*, 253 S.W.3d 557 (Ky. App. 2007).

[7] *Commonwealth v. Douglas James Goodpastor*, Warren Circuit Court Case No. 08-CR-00385.

accurate.  Goodpastor was sentenced to serve two years and was denied shock probation.

Thomas offered the criticism she had made about the Goodpastor case as a related explanation that she was just expressing her frustration, not really threatening to kill anyone.  In further support of her intention, Thomas planned to call her mother as a witness.  During a bench conference, inevitable limitations for what this witness could say about what Thomas said were discussed.

Generally, the statements of a defendant are hearsay unless offered against them.  KRE 801A(b).  There are exceptions to the hearsay prohibition.  For example, statements about a person's "then existing mental, emotional, or physical condition" are permitted.  KRE 803(3).  But this can only go so far.  Thomas' mother may have been able to describe times when Thomas was angry or agitated, but this would not allow a wholesale introduction of everything Thomas said to explain her feelings.

We offer an example of KRE 803(3) evidence.  A witness testifies that a party to a case said she planned to get a divorce.  This statement would fit within KRE 803(3).  When asked why she intended to seek a divorce, the party gives specifics about various prior events in the marriage.  These factual details would not necessarily be part of the hearsay exception, which is limited to expressions about current intent or state of mind.

Thomas argues the circuit court prevented her from calling a witness. That is inaccurate. The circuit court did not prevent the calling of any witness. The circuit court properly expressed concern about anticipated and proper objections and the limitations the court would have to impose on the testimony. Thomas chose not to call her mother as a witness and further chose, as she had the right to do, not to testify herself about her state of mind and intentions.

Thomas made no further record, such as an avowal of specific questions and answers. Although there was no error in this regard, any such error would have been harmless. RCr[8] 9.24. Thomas presented her defense about her intentions through evidence of her other comments through other witnesses. What limited evidence might properly have come from Thomas' mother under KRE 803(3) would have been cumulative or would not have resulted in a different verdict given all the other evidence in this record. This evidence includes the actions by Thomas of deactivating the social media account just after sending the messages and then being initially dishonest with the police about the account and the messages sent.

The remaining claims of error ultimately both relate to the jury instructions. Throughout discovery and during the trial, there was no question that the threats made included Bumgarner's children. While Thomas sought to limit

---

[8] Kentucky Rules of Criminal Procedure.

evidence to the statements about death to Bumgarner herself, the circuit court correctly permitted evidence about the threatened death to Bumgarner's children. All the threats were made at the same time and indicated the same criminal motive and intent.

In discussing instructions, Thomas argued the instructions should be limited to Bumgarner herself because that was the only name in the Indictment. Instead of altering the instructions, it appears the circuit court agreed to the Commonwealth's request to amend the Indictment to include a reference to the children. A review of the record does not show that the Indictment was in fact amended. The writing on the Indictment itself was not altered, and no written order added the language about the children. Yet, the circuit court did orally indicate the amendment was proper and ordered it.

KRS 524.055(3) specifically includes the immediate family of the participant. This overlaps with KRS 524.010, which provides definitions for the same statutory chapter. Bumgarner clearly was a prosecutor as defined in KRS 524.010(7). A prosecutor is a participant in the legal process as defined by KRS 524.010(3). Significantly, by definition, every individual participant "includes members of the participant's immediate family." *Id*. Thus, with the threats about the children known to the defense from the beginning of this case, the reference to

Bumgarner alone arguably should have been sufficient notice to include her children.

The dissent understandably expresses concern about RCr 6.16, which instructs the court as to amendments to an indictment. Perhaps it would have been better practice to name the children in the original Indictment. Even with the typical use of initials for children, their identity would have been easy for the public to determine. This concern may have led to the omission.

Last minute amendments to Indictments may be permitted by our rules, but they should be avoided. Our question here was whether the circuit court abused its discretion in the particular circumstances of this case. And if so, was this error harmful to Thomas?

RCr 6.16 permits amendment of an indictment at any time before a verdict is received by the court "if no additional or different offense is charged" and there is no prejudice to the substantial rights of the defendant. Thomas faced one count of Retaliation Against a Participant in a Legal Proceeding before the amendment and after it. The difference was only in identifying the victim or victims.

In *Clark v. Commonwealth*, 267 S.W.3d 668 (Ky. 2008), the Kentucky Supreme Court discussed a change of name in an indictment at trial. While addressed in the context of palpable error, the analysis of RCr 6.16 is

helpful to our question here. The basic idea is that "a defendant should be aware of the crimes charged against him and the evidence forthcoming so that he may prepare a defense." *Id*. at 679. "[U]nder modern rules the essential question when examining variance between the indictment and the proof is whether the defendant had fair notice and a fair trial." *Johnson v. Commonwealth*, 864 S.W.2d 266, 272 (Ky. 1993).

From the beginning, Thomas knew of the evidence about the simultaneous threats to the children. Given the intertwined nature of the communications about Bumgarner and her children, which were evidence of the nature of the threat and the intent behind it, Thomas' counsel could not be surprised about the admissibility of this evidence. When the circumstances of this case are examined as a whole, there was no prejudice to Thomas by the addition of the children's names. The circuit court did not err in the amendment of the Indictment or the consistent jury instructions. Even if there were any error in this regard, it was harmless.

This leaves the question of a lesser included offense. Thomas insists that Harassing Communications is a lesser included offense. A lesser included offense is one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" KRS 505.020(2)(a). We have found no prior appellate case in which Harassing

Communications was determined to be a lesser included offense of Retaliation Against a Participant in a Legal Proceeding. We find good reason for this dearth of caselaw. Harassing Communications does not fit as a lesser included offense for the retaliation charge.

Harassing Communications requires communication with the victim using specified means. As we have previously pointed out, retaliation does not actually require communication of the threat. Even if we could see our way clear to consider the lesser included offense argument, Thomas would not have been entitled to the instruction anyway. The circuit court was not required to give a lesser included offense instruction in the circumstances of this case.

"An instruction on a lesser included offense should not be given unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but conclude that he is guilty of the lesser included offense." *Luttrell v. Commonwealth*, 554 S.W.2d 75, 78 (Ky. 1977). Given the admitted messages sent to a prosecutor speaking of her death and the death of her children, a rational juror could not have concluded that Thomas was guilty of Harassing Communications but not Retaliation Against a Participant in the Legal Process. No level of "frustration" may serve as a defense or excuse to threatening the death of a prosecutor and her children.

CONCLUSION

The Warren Circuit Court committed no errors in its evidentiary rulings or with its instructions to the jury on the charge in this case. The Warren Circuit Court is AFFIRMED.

KAREM, JUDGE, CONCURS.

TAYLOR, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

TAYLOR, JUDGE, DISSENTING: Respectfully, I dissent. The original indictment in this case only named the prosecutor, not her children, as the purported victim of the charges against appellant arising from threats made in violation of KRS 524.055. While the statute clearly provides that threats made against the children could be a violation thereof, the children were not named in the original indictment as victims. The Fifth Amendment mandates that a defendant may only be tried for criminal conduct that is set forth in an indictment by a grand jury. *Stirone v. United States*, 361 U.S. 212, 217-19 (1960).

The Commonwealth's motion to amend the indictment at the close of evidence to add the children as victims, and effectively create new charges against the defendant, was clearly prejudicial in total contravention of RCr 6.16. Similarly, including threats against the children in the jury instructions was reversible error, in my opinion.

-15-

As the majority notes, the Commonwealth moved to amend the indictment to include the children as victims at the close of evidence at trial, which was granted by the trial court and is reflected in the jury instructions. The Commonwealth had over eight months to amend the indictment prior to trial, yet failed to do so. While the additional charges naming the children as victims were the same type of crimes as committed against the prosecutor, they nonetheless are entirely separate criminal acts against other victims. This clearly constituted an unfair surprise to the defendant in planning her trial strategy and more importantly, was unduly prejudicial for the defendant in the eyes of the jury.

Under these circumstances, I do not believe this was harmless error. I would vacate the judgment and remand for a new trial.


BRIEF FOR APPELLANT:

Kathleen K. Schmidt
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky