RENDERED: DECEMBER 14, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000070-MR

JOHN GRAY                                           APPELLANT

V.

ON APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE ROBERT G. JOHNSON, JUDGE
NO. 14-CR-00217

COMMONWEALTH OF KENTUCKY                  APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**AFFIRMING**

Appellant, John Wesley Gray, appeals from a judgment of the Scott Circuit Court convicting him of three counts of violating a protective order,[1] kidnapping, two counts of first-degree unlawful imprisonment, first-degree burglary, and being a first-degree persistent felony offender (PFO). With the PFO enhancement, the jury recommended a total sentence of 50 years in prison. The trial court entered judgment accordingly. On appeal, Appellant claims that the trial court erred by 1) admitting improper character evidence and 2) failing to grant a directed verdict on the two counts of first-degree unlawful imprisonment. For the reasons stated below, we affirm the judgment.

---

[1] Violating a protective order is a Class A misdemeanor under KRS 403.763.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant's three-year romantic relationship with Angel Hardy came to an abrupt end when Hardy discovered text messages on his phone that he was involved with another woman. When Hardy confronted Appellant about his infidelity, he threatened to shoot her in the face. Hardy ordered Appellant to vacate the residence he shared with her and her children. She also obtained an emergency protective order (EPO) against him.

One week after entry of the EPO, Appellant returned to the residence when no one was home. When Hardy's seventeen-year-old son, A.H., arrived with Hardy's granddaughter, T.T., Appellant confronted him with a gun in hand and hit him in the face. He then used zip ties to bind the wrists of A.H. and T.T., put duct tape over their mouths, and put them in bedroom closets. When Hardy arrived, Appellant hit her with a pistol and bound her wrists with zip ties. Hardy successfully calmed Appellant by telling him they could resume their relationship. At that point, Appellant untied Hardy and released A.H. and T.T., however, he threatened further harm if Hardy reported the incident to police. Rather than call the police immediately, Hardy decided to report the incident when they appeared in court for the upcoming hearing to convert the EPO to a domestic violence order. After Appellant left the residence, Hardy asked her neighbors to call the police, if they saw him at the house again.

The next day, Appellant returned to the residence, and on the following day, neighbors called the police. They arrived and arrested Appellant for the apparent violation of the EPO. Hardy then reported the home invasion and

2

related offenses that occurred earlier. Appellant was indicted on four counts of violating an EPO, three counts of kidnapping, first-degree burglary, and being a first-degree persistent felony offender (PFO).[2] A jury found him guilty of three counts of violating a protective order, kidnapping, two counts of first-degree unlawful imprisonment, first-degree burglary, and being a first-degree PFO.

## II. ANALYSIS

### A. Evidence of Appellant's "other crimes, wrongs, or acts."

#### 1. *The evidence of Appellant's prior threat against Hardy was not improper.*

Appellant's first assignment of error is the trial court's decision allowing the jury to hear evidence of the threat that precipitated the issuance of the EPO, Appellant's threat to shoot Hardy in the face. Prior to trial, the Commonwealth filed notice under KRE 404(c) of its intent to introduce evidence of the threat.[3] Appellant objected and thus preserved the issue for appellate review. The admission of "other acts" evidence under KRE 404(b) is reviewed on appeal for abuse of discretion: whether the trial judge's decision to admit the evidence was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005); *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[2] Appellant was also indicted for possession of a handgun by a convicted felon, but this charge was severed from the trial of the charges at issue in this appeal.

[3] The notice also disclosed the Commonwealth's intent to produce other "bad acts" evidence, but those matters were resolved to the satisfaction of the parties.

3

KRE 404(b) is a rule of exclusion barring the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." However, KRE 404(b) provides two exceptions to the rule. Evidence of "other crimes, wrongs, or acts" may be admitted if "offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 404(b)(1). And, such evidence may be admitted if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b)(2).

Even when deemed otherwise admissible under the KRE 404(b) exceptions, the proffered evidence must also pass the balancing test of KRE 403, which authorizes the exclusion of any evidence when "its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Consequently, the admissibility of Appellant's "other wrong, crime or act," i.e., his threat to shoot Hardy in the face, must be evaluated by weighing its relevance, probative value and prejudicial effect. *Bell v. Commonwealth*, 875 S.W.2d 882, 889-890 (Ky. 1994) (Evidence of prior uncharged offense was properly admitted when it was relevant to the crime charged, sufficiently probative, and its probative value outweighed its prejudice resulting from its admission.).

4

Citing *Daniel v. Commonwealth*, 905. S.W.2d 76, 78 (Ky. 1995), Appellant contends that the Commonwealth never demonstrated how Appellant's threat tended to establish his intent, motive, plan, or any other relevant purpose bringing it within the 404(b)(1) exception, or that the threat was inextricably intertwined with evidence essential to proving the crimes charged so as to bring it within the 404(b)(2) exception. He contends that the prior threat had little or no probative value because the jury would be otherwise aware of the issuance of the EPO, and the act the precipitated the EPO would simply add undue prejudice and arouse the jury's emotions against him.

The Commonwealth argues that because of the context in which the threat was made—Appellant and Hardy fighting over his unfaithfulness—the threat was probative and relevant to explain the EPO and its violation. Citing *Clark v. Commonwealth*, 267 S.W.3d 668, 681 (Ky. 2008), the Commonwealth further contends that Appellant's threat tended to verify the fact that Hardy delayed her reporting the home invasion because she was afraid of Appellant, thus making the threat inextricably intertwined with other evidence.

In *Clark*, the mother of sexual abuse victims did not immediately confront her physically abusive cohabitating boyfriend about sexually abusing the children because she was afraid he would do her harm. She waited until the next day to report him. The *Clark* court held that

> the setting and context of the events surrounding [the mother's] discovery of the sexual abuse of her children, and her reasons for not contemporaneously confronting [her long-term boyfriend, the] Appellant about it, were germane to the overall sequence of events surrounding the crimes and to the events which led to them being

5

reported to authorities. As such, this evidence was inextricably intertwined with other evidence critical to the case.

267 S.W.3d at 681.

The trial court conducted a pre-trial hearing on the issue. We cannot say that it abused its discretion upon concluding that Appellant's threat, uttered just a week before the crimes, served a relevant purpose other than to prove Appellant's criminal disposition, and that the potential for prejudice resulting from the evidence did not substantially outweigh its probative value. *Bell*, 875 S.W.2d at 889-891; *Billings v. Commonwealth*, 843 S.W.2d 890 (Ky. 1992). We are satisfied that the evidence of Appellant's recent threat to shoot Hardy in the face was relevant to explain her reluctance to report Appellant's later crimes until after he was arrested. We agree with the trial court that the prejudicial impact of the evidence was outweighed by its probative value.

## 2. The trial court's admonition cured any prejudice caused by testimony that Appellant said he had "a violent history."

Hardy testified that Appellant told her that he was angry because he thought the EPO would prevent him from seeing his children since, in his words, he "had a violent history." Appellant objected to that testimony and moved for a mistrial. The trial court declined to declare a mistrial and instead, admonished the jury to "disregard the comment made about [Appellant's] history." Appellant argues that the jury likely inferred from that testimony that Appellant had an established record of violence, and that he had acted in conformity with a criminal disposition. He contends that the admonition was

6

insufficient to erase the prejudice caused by the testimony, as suggested by the severity of a 50-year prison sentence.

The Commonwealth concedes that Hardy should not have repeated the portion of Appellant's statement referring to his "violent history," but asserts that a mistrial was not warranted under the facts of this case. A trial court is authorized to use its discretion to declare a mistrial only when there is a manifest necessity, when the right to a fair trial has been infringed upon and the prejudicial event cannot otherwise be remedied. *Radford v. Lovelace*, 212 S.W.3d 72, 79-80 (Ky. 2006) (overruled on other grounds by *Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009)). An admonition to the jury ordinarily cures an accidental admission of prior bad acts. *Boyd v. Commonwealth*, 439 S.W.3d 126, 132-133 (Ky. 2014) (citation omitted). Appellant argues that in this case, as evidenced by the 50-year sentence, there was an "overwhelming probability that the jury [was] unable to follow the court's admonition *and* there [was] a strong likelihood that the effect of the inadmissible evidence [was] devastating" to a fair trial. *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003).[4]

We do not regard Hardy's testimony as a statement in which Appellant attributed to himself any specific crimes for wrongful acts. The testimony was combined with Hardy's explanation of Appellant's unlawful entry into her home, his restraint of her son and granddaughter, and his assault upon her.

---

[4] The other exception to the presumptive efficacy of an admonition is when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial." *Id.* (citations omitted).

In context, given the evidence presented and Appellant's PFO status, the aggregate sentence of fifty years does not stand out as symptomatic of a jury inflamed by the reference to Appellant as a man with a "violent history." It does little to persuade us the that the jury failed to heed the admonition. *Matthews v. Commonwealth,* 163 S.W.3d 11, 17 (Ky. 2005).

We acknowledge the truth of Appellant's argument that "unring[ing] the bell" of unfairly prejudicial testimony is impossible.[5] We simply conclude that the statement under review did not ring the bell so loudly that its resonance muted the curative effect of the judge's admonition. The trial court's denial of a mistrial was not an abuse of discretion.

## B. We decline to grant palpable error review of Appellant's claim that he was entitled to a directed verdict on first-degree unlawful imprisonment.

The trial court separately instructed the jury on the kidnapping of A.H. and T.T. With respect to each alleged victim the trial court also instructed on the lesser included offenses of first-degree unlawful imprisonment and second-degree unlawful imprisonment. Appellant affirmatively requested the instructions on second-degree lawful imprisonment and he voiced no objection to the instructions on first-degree unlawful imprisonment. Appellant did not move for a directed verdict on those charges.

On appeal, Appellant seeks palpable error review of the trial court's failure to grant, *sua sponte,* directed verdicts on the charges of first-degree

---

[5] *Dickerson v. Commonwealth,* 174 S.W.3d 451, 466 (Ky. 2005) (quoting *Foster v. Commonwealth,* 827 S.W.2d 670, 683 (Ky. 1991)).

8

unlawful imprisonment. As grounds for his argument, appellant asserts that the Commonwealth failed to prove an essential element of first-degree unlawful imprisonment as defined by KRS 509.020(1): that A.H. and T.T. were exposed to a risk of serious physical injury.[6] We conclude the Appellant is not entitled to the relief he seeks.

A "directed verdict of acquittal [is properly granted] when the defendant is entitled to a complete acquittal, i.e., when looking at the evidence as a whole, it would be clearly unreasonable for a jury to find the defendant guilty, under any possible theory, of any of the crimes charged in the indictment *or of any lesser included offenses." Campbell v. Commonwealth*, 564 S.W.2d 528, 530 (Ky. 1978) (emphasis added); *accord Baker v. Commonwealth*, 973 S.W.2d 54, 55 (Ky. 1998); *Acosta v. Commonwealth*, 391 S.W.3d 809, 817 (Ky. 2013).

Notwithstanding Appellant's failure to move for the directed verdict he now claims he should have had, upon application of the above-stated rule, the actual question, properly framed, is whether Appellant was entitled to a directed verdict acquitting him of the primary charge of kidnapping and its lesser included offenses. Addressing *that* question requires a look at the evidence as a whole to determine if it would be clearly unreasonable for a jury to find him guilty of kidnapping *or* either of the two lesser included offenses of first-degree and second-degree unlawful imprisonment.

---

[6] KRS 509.020(1) provides that "[a] person is guilty of unlawful imprisonment in the first degree when he knowingly and unlawfully restrains another person under circumstances which expose that person to a risk of serious physical injury."

9

Since Appellant expressly requested instructions on second-degree unlawful imprisonment, he conceded the evidence was sufficient on that charge.[7] He contends only that it was clearly unreasonable for the jury to find him guilty of first-degree unlawful imprisonment. Based upon *Campbell, Baker,* and *Acosta* we conclude that the trial court did not err by failing to enter a directed verdict.

By couching his request for palpable error review in terms of the directed verdict standard, Appellant seeks to evade the barrier that RCr 9.54(2)[8] poses for the real issue he would have us address: whether the trial court erred by instructing the jury on first-degree unlawful imprisonment in light of the scant evidence of a risk of serious physical injury to A.H. and T.T. To preserve his claim that

> the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case, the correct procedure is to object to the giving of instructions on those particular issues. . . . The appropriate procedure here would thus have been for appellant, at the close of the evidence and before the instructions were given, to apprise the trial court that he objected to the giving of [the first-degree unlawful imprisonment instruction] for the reason that [the crime] had not been sufficiently proven.

---

[7] KRS § 509.030(1) provides that "[a] person is guilty of unlawful imprisonment in the second degree when he knowingly and unlawfully restrains another person."

[8] RCr 9.54(2) states: No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

10

*Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky. 1977); *accord Campbell*, 564 S.W.2d at 530.

In *Martin v. Commonwealth*, 409 S.W.3d 340 (Ky. 2013), we clarified the effect of RCr 9.54(2)[i] on palpable error review of unpreserved claims of erroneous jury instructions. "Although palpable error under RCr 10.26 may be available for certain kinds of instructional error . . . RCr 9.54(2) bars palpable error review for unpreserved claims that the trial court erred in the giving or the failure to give a specific instruction." *Id.* at 345. Appellant did not object to giving of jury instructions on first-degree unlawful imprisonment and so the trial court's decision to give those instructions is not subject to palpable error review. We see no reason to obliquely address the same issue under the guise of a directed verdict issue when it is clear that Appellant was not entitled to a directed verdict of acquittal on the primary charge of kidnapping.

## III. CONCLUSION

For the reasons stated above, we affirm the judgment of the Scott Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate

11

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General