RENDERED: AUGUST 16, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2017-SC-000024-DG

DATE 9/6/18 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY                                      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2014-CA-000381-MR
JEFFERSON CIRCUIT COURT NO. 05-CR-002357

JOHNNIE DOUGLAS                                               APPELLEE

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

## AFFIRMING IN PART AND REVERSING IN PART

On February 24, 2005, Appellant, Johnnie Ray Douglas, robbed a Check Advance store in Louisville, Kentucky, at gunpoint. He left the clerk handcuffed to a pipe. On June 25, 2005, Douglas robbed $2,700 cash from Cash Tyme at gunpoint. This was another check-cashing business just up the road from his prior robbery. His unidentified accomplice left two Cash Tyme employees tied up in a back room. The victims and other eyewitnesses identified Douglas as one of the robbers.

On August 4, 2005, a Jefferson County grand jury indicted Douglas on multiple counts relating to the two incidents: two counts of first-degree robbery, three counts of kidnapping, one count of being a first-degree

Persistent Felony Offender ("PFO"), and two counts of possession of a firearm by a convicted felon. The latter charges stemmed from Douglas' prior convictions, including his conviction for a bank robbery in 1985. Ultimately, the two charges of possession of a firearm by a convicted felon were severed.

Voir dire was conducted in 2006 to empanel a jury. During voir dire, Juror 151651 (henceforth "juror") informed counsel and the trial judge that he had been the victim of an armed robbery when he worked as a bank teller many years ago. The only follow-up question anyone asked him was whether he could be fair despite his personal experience, to which he answered in the affirmative. Later, defense counsel attempted to use a peremptory strike to remove that juror. However, counsel accidentally struck the juror sitting next to the juror in question instead. He had already used his allotted peremptory strikes and the trial judge denied his request for an additional peremptory strike. As a result, the juror at issue sat on the jury.

There was overwhelming evidence of Douglas' guilt at trial, including: eyewitness testimony from his robbery victims; testimony that an eyewitness tailed him after the Cash Tyme robbery and gave his vehicle's description to the police; and the robbery weapon, about $1,200 cash, and other evidence obtained from his traffic stop. After hearing the evidence, the jury deliberated and returned guilty verdicts for one count of robbery and two counts of kidnapping. Then the jury heard evidence regarding Douglas' PFO charge and the corresponding sentencing options. After further deliberation, the jury

2

found Douglas to be a PFO and recommended an enhanced sentence of 35 years to run concurrently.

Following the jury's release, the juror in question approached the trial judge and informed him that a document introduced to the jury during the PFO consideration and sentencing phase—Douglas' indictment for the 1985 bank robbery—listed that juror by name as the victim of the robbery. The juror told the judge that he did not recall Douglas being the man who robbed him until Douglas' 1985 indictment refreshed his recollection during the PFO consideration and sentencing phase.

Afterward, the judge informed Douglas, defense counsel, and the Commonwealth of the juror's recollection. The judge instructed counsel to address the issue at the sentencing hearing. At the sentencing hearing, defense counsel told the judge that Douglas had decided to appeal his conviction rather than ask for a new trial based upon the potential bias of the juror at issue. The trial court adopted the jury's recommended 35-year sentence.

On a matter of right appeal to this Court, Douglas argued for reversal of his conviction because the jury was tainted by the juror in question. He alleged that the trial judge committed reversible error when he denied defense counsel's request for an additional peremptory strike, so the juror could have been removed. We rejected his arguments because any issue related to the jury's composition was not preserved by post-verdict objections during the sentencing phase. *Douglas v. Commonwealth*, 2006-SC-000882-MR, 2007 WL

3

4462309, at *4 (Ky. Dec. 20, 2007). As noted, Douglas instructed defense counsel to make no post-verdict motions.

Further, we held that the trial court acted within its discretion when it denied Douglas an extra peremptory strike. *Douglas*, 2007 WL 4462309, at *4. In so ruling, we noted that, at the time Douglas requested an additional peremptory strike, everyone knew the juror at issue was a bank robbery victim, but no one knew that he was Douglas' former victim. Considering the juror's statement that he could be fair and impartial, we held that the juror's disclosures up to that point were not disqualifying. Although we reversed the two kidnapping charges against Douglas and remanded them for a new trial to consider exemptions to the kidnapping instructions, we upheld his conviction and enhanced PFO sentence for first-degree robbery. *Id.* at *11.

After we rendered our opinion on Douglas' direct appeal, and before he was retried on the kidnapping charges, he filed an RCr 11.42 motion pro se in 2009 and requested new counsel. The trial court appointed counsel from the Kentucky Department of Public Advocacy ("DPA"), who filed a supplemental motion. These motions alleged Douglas received ineffective assistance of counsel for two reasons: (1) for counsel's alleged failure to properly question the juror at issue during voir dire about the details of the robbery he was the victim of; and (2) for counsel's failure to move for a new trial when the juror revealed he was a victim of Douglas' prior robbery, rather than appealing on an unpreserved issue.

In 2014, the circuit court held a hearing and denied Douglas' RCr 11.42 motion. The circuit court concluded that even though defense counsel was likely deficient for failing to ask the juror follow-up questions, Douglas was not prejudiced by counsel's deficient performance. The circuit court further reasoned that the overwhelming evidence against Douglas meant he was likely to be convicted. Thus, the court said the juror did not affect the trial's outcome. Lastly, the circuit court found that defense counsel's decision to appeal the case rather than move for a new trial was a trial strategy that Douglas could not attack under RCr 11.42.

Douglas appealed the circuit court's denial of his RCr 11.42 motion to the Kentucky Court of Appeals. On appeal, the court reversed the circuit court and remanded Douglas' case for a new trial. The court agreed that defense counsel should have questioned the juror further to determine if his robbery was connected to Douglas' former robbery. However, the Court of Appeals found that the presence of a biased juror like the juror in question is a structural error from which prejudice is presumed. Moreover, the court stated that, even if the error were not structural, Douglas' relationship to the juror was sufficient proof of prejudice to warrant reversal. Further, the court proposed that defense counsel's failure to move for a new trial was ineffective assistance, rather than a sound trial strategy.

The Commonwealth petitioned this Court for discretionary review of this case, which we granted.

5

## Analysis

### *Structural Error and Harmless Error*

Defendants are guaranteed the right to an impartial jury by the Sixth Amendment to the United States Constitution, as well as Sections Seven and Eleven of the Kentucky Constitution. Denial of a defendant's right to an impartial jury is a structural error. *Hayes v. Commonwealth*, 175 S.W.3d 574, 586 (Ky. 2005). It is therefore not subject to harmless error analysis, as prejudice is presumed. *See Shane v. Commonwealth*, 243 S.W.3d 336, 341 (Ky. 2007) ("Harmless error analysis is simply not appropriate where a substantial right is involved."). "[T]he defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.' For the same reason, a structural error 'def[ies] analysis by harmless error standards." *Weaver v. Massachusetts*, 137 S.Ct. 1899, 1907-08 (2017) (internal citations omitted). For instance, "[f]ailure to remove biased jurors taints the entire trial," *Wolfe v. Brigano*, 232 F.3d 499, 503 (6th Cir. 2000), and prejudice is presumed from such a deprivation of a defendant's right to an impartial jury.

The test for harmless error "is whether it appears 'beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained." *Stewart v. Commonwealth*, 306 S.W.3d 502, 508 (Ky. 2010) (quoting *Neder v. United States*, 527 U.S. 1, 2 (1999)).

### Right to Impartial Jury

For his first argument, Douglas alleges that his Sixth Amendment right to an impartial jury was violated when the trial court permitted the juror in question to be empaneled on the jury. Attendant to this issue is an ineffective assistance claim that defense counsel failed to strike the juror or to move the court to strike the juror for cause. Douglas argues that these are both structural errors.

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Fields v. Commonwealth*, 274 S.W.3d 375, 393 (Ky. 2008) (quoting *Morgan v. Illinois*, 504 U.S. 719, 729 (1992)) (overruled on other grounds by *Childers v. Commonwealth*, 332 S.W.3d 64 (Ky. 2010)). Here, the trial court provided the parties with voir dire to empanel a jury. Foremost, it is important to emphasize that the trial court and counsel were unaware that the juror in question was one of Douglas' former robbery victims until the sentencing phase of the trial. To that end, the juror himself stated that he was unaware of his relationship with Douglas until the jury deliberated whether to recommend an enhanced sentence based on Douglas' PFO status—*after* the guilt phase had concluded.

We find that the Court of Appeals erred in ruling that bias could be presumed against Douglas by the juror. It was not an abuse of discretion for the court to not strike the juror because he was a robbery victim. The juror stated during voir dire that he could be an impartial juror despite having been a robbery victim.

As such, the juror in question lacked prejudice in the guilt phase. There is no evidence in the record that shows the juror was biased against Douglas during the guilt phase of the trial. The only evidence that the juror was aware Douglas had robbed him twenty-one years prior appeared during sentencing—after the jury had rendered its guilty verdict. Because the court, the parties, and the juror himself were unware of the juror's bias against Douglas, we do not find that Douglas' right to a fair trial was impeded. Since the juror's presence on the jury was not structural error, we analyze the trial court's actions for an abuse of discretion under harmless error analysis.

As such, we reaffirm our holding in Douglas' matter of right appeal: the trial court did not abuse its discretion by not declaring a mistrial during the guilt phase. "A trial court is authorized to use its discretion to declare a mistrial only when there is a manifest necessity, when the right to a fair trial has been infringed upon and the prejudicial event cannot otherwise be remedied." *Gray v. Commonwealth*, 534 S.W.3d 211, 215 (Ky. 2017). Through the guilt phase, there was no manifest necessity to protect Douglas' right to a fair trial. Because Douglas has not shown a reasonable probability of a different outcome but for defense counsel's failure to question the juror or to request a new trial, he is not entitled to a new trial. The guilt phase of the trial was not fundamentally unfair.

In Douglas' matter of right appeal, we held that his argument based on *Morgan v. Commonwealth*, 189 S.W.3d 99 (Ky. 2006) (overruled by *Shane*, 243 S.W.3d at 341)—claiming the sentencing jury was tainted—was unpreserved

and misplaced. However, given the U.S. Supreme Court's precedent in *Weaver*, combined with this Court's precedent in *Shane* overruling *Morgan*, it is clear that the taint in the sentencing jury was a structural error for which harmless error analysis is inappropriate. Thus, we must now assess his claim of a tainted PFO and sentencing jury for structural error under *Weaver*, rather than the harmless error analysis from *Morgan* that we conducted in Douglas' matter of right appeal.

The juror's realization that he was Douglas' former victim made the penalty phase fundamentally unfair. Once the trial court and counsel learned about the juror's bias after the PFO and sentencing trial, a mistrial should have been entered and a new PFO and sentencing trial held. It is unreasonable to believe that Douglas was not prejudiced by a former victim—who realized he was Douglas' victim—sitting on the jury that decided whether his sentence warranted PFO enhancement. Nothing short of a retrial of the sentencing phase PFO consideration with a newly-empaneled jury will remedy the prejudice Douglas suffered. *See Gray*, 534 S.W.3d at 215.

### Right to Effective Assistance of Counsel

For his second argument, Douglas alleges that his Sixth Amendment right to the effective assistance of counsel was violated when his attorney acquiesced with the prosecutor to permit the trial court to not declare a mistrial for empaneling the juror in question. Douglas argues that his trial counsel provided ineffective assistance by failing to seek post-verdict relief after

learning from the court that the juror at issue was a victim of Douglas' other robbery in 1985.

In support of his ineffective assistance claim, Douglas cites *Weaver* for the proposition that an ineffective assistance claim pertaining to the right to an impartial jury raises a structural error. In *Weaver*, the U.S. Supreme Court broadly defined structural error analysis. However, contrary to Douglas' view, the U.S. Supreme Court did not hold that all errors during jury selection amount to structural errors. Rather, *Weaver* dealt specifically with the deprivation of the Sixth Amendment right to a public trial, which the high court held does not create a presumption of prejudice for an ineffective assistance of counsel claim. *Weaver*, 137 S.Ct. at 1912-13.

Even though we find that *Weaver* clarifies that a biased juror's participation during sentencing is a structural error, we are not persuaded that structural error analysis applies to all claims of ineffective assistance dealing with jury selection. Therefore, we review defense counsel's alleged errors under a harmless error standard.

However, since Douglas expressly declined to move for a new trial or other post-verdict grounds for relief, this error is unpreserved. Thus, the proper inquiry is whether the error is a palpable. RCr 10.26.

In order for a client to establish that his counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), he or she must demonstrate: (1) counsel's representation was deficient; and (2) the client suffered actual prejudice as a result of the alleged ineffective assistance. *Id.* at 687.

10

Defense counsel did not move to strike the juror for cause during voire dire, as the court and the parties were unaware of the juror's bias at the time. That was no error. Additionally, while defense counsel erred in mistakenly striking another juror instead of the juror in question, counsel's error did not entitle Douglas to additional peremptory challenges.

Despite this procedural error on the part of defense counsel, failure to strike the juror at issue did not subject Douglas to actual prejudice until the penalty phase. Douglas still received a fair jury trial through the guilt phase because the juror was objectively unbiased until sentencing, when he realized that Douglas was the man who robbed him.

Finally, Douglas argues that defense counsel's failure to seek post-verdict relief upon learning the juror was biased amounted to ineffective assistance. However, at the sentencing hearing, defense counsel stated that he and Douglas had discussed which avenue to take upon learning of the juror's bias, and that Douglas had directed that they proceed with an appeal rather than seek a new trial. Douglas cannot now claim that his attorney provided him with ineffective assistance by following his direction as part of their trial strategy.

## Conclusion

For the foregoing reasons, we hereby affirm the decision of the Court of Appeals in part and reverse in part. Prejudice could not be presumed from the juror's presence on the jury because no one knew of his bias toward Douglas during voir dire or the guilt phase of the trial—including the juror himself.

However, once the juror realized his relationship with Douglas and so informed the court, prejudice could be presumed. Therefore, Douglas is entitled to a new PFO and sentencing trial because those proceedings were fundamentally unfair.

All sitting. Minton, C.J.; Cunningham, Hughes, Keller, VanMeter, and Venters, JJ., concur. Wright, J., concurs in result only.


COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General


COUNSEL FOR APPELLEE:

Robert C. Garrison
Assistant Public Advocate