# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  FEBRUARY 16, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0381-MR
2021-SC-0384-MR

KEVIN RUSSELL                                                                    APPELLANT

ON APPEAL FROM CASEY CIRCUIT COURT
V.               HONORABLE JUDY VANCE MURPHY, JUDGE
NO. 19-CR-00167

COMMONWEALTH OF KENTUCKY                                          APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

The Sixth and Fourteenth Amendments to the United States Constitution, and Section 11 of the Kentucky Constitution, guarantee a fair trial by a panel of impartial, indifferent jurors.  *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013).  RCr[1] 9.36(1) establishes the standard for dismissal: "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified."  The primary issue in this appeal is whether the Casey Circuit Court abused its discretion by denying Kevin Russell's motion to strike Juror 432 for cause.  Concluding that it did not, we affirm.

---

[1] Kentucky Rule of Criminal Procedure.

## I. Factual and Procedural Background

A jury convicted Russell of one count of trafficking in a controlled substance, first-degree, first offense, two or more grams of methamphetamine; one count of persistent felony offender ("PFO") in the second degree; one count of possession of marijuana; and one count of possession of drug paraphernalia. The jury recommended a sentence of twenty years for the trafficking count, as enhanced by the PFO count, which the trial court imposed. Russell now appeals as a matter of right.[2]

## II. Analysis

### A. *Russell's motion to strike Juror 432 was properly denied.*

Russell first argues that the trial court improperly denied his motion to excuse Juror 432 for cause. The Sixth and Fourteenth Amendments to the United States Constitution, as well as Section 11 of the Kentucky Constitution, protect a criminal defendant's right to an impartial jury. *Ordway*, 391 S.W.3d at 780. Because denial of this right is structural, we do not apply harmless error analysis to such claims. *Commonwealth v. Douglas*, 553 S.W.3d 795, 799 (Ky. 2018). Rather, where the right is infringed, prejudice is presumed. *Id.*

To preserve this issue, a party must follow the six-step process outlined in *Floyd v. Neal*:

> [A] litigant must: (1) move to strike the juror for cause and be denied; (2) exercise a peremptory strike on said juror, and show the use of that peremptory strike on the strike sheet, and exhaust all other peremptory strikes; (3) clearly indicate by writing on her strike sheet the juror she would have used a peremptory strike on, had she not

---

[2] Ky. Const. § 110(2)(b).

> been forced to use a peremptory on the juror complained of for cause; (4) designate the same number of would-be peremptory strikes as the number of jurors complained of for cause; (5) the would-be peremptory strikes must be made known to the court prior to the jury being empaneled; and (6) the juror identified on the litigant's strike sheet must ultimately sit on the jury.

590 S.W.3d 245, 252 (Ky. 2019). No party disputes that Russell has fulfilled these preliminary requirements and our review of the record confirms *Floyd* was followed. Following Juror 432's initial interview at the bench, Russell moved to strike Juror 432 for cause, which the trial court denied. Russell renewed his motion after Juror 432 was recalled to the bench and the trial court again denied the motion. Russell used all his peremptory strikes, including one for Juror 432. Defense counsel noted on the strike sheet that had Russell not used a peremptory strike on Juror 432, he would have used it on Juror 355. Juror 355 subsequently sat on the jury and was not excused as an alternate. *Floyd* having been satisfied, we turn to the merits of Russell's claim.

This Court reviews a trial court's ruling on a motion to strike a juror for cause for an abuse of discretion. *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 192 (Ky. 2017). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Whether a juror has formed an opinion or expressed a bias which makes her unqualified for service on the jury is a mixed question of law and fact. *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009).

3

The standard for striking a juror for cause is found in RCr 9.36(1): "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." "The central inquiry is whether a prospective juror can conform his or her views to the requirements of the law, and render a fair and impartial verdict based solely on the evidence presented at trial." *Hubers v. Commonwealth*, 617 S.W.3d 750, 762 (Ky. 2020) (quoting *Wood v. Commonwealth*, 178 S.W.3d 500, 516 (Ky. 2005)). Generally, "'where questions about the impartiality of a juror cannot be resolved with certainty, or in marginal cases, the questionable juror should be excused.'" *Jerome v. Commonwealth*, 653 S.W.3d 81, 88 (Ky. 2022) (quoting *Ordway*, 391 S.W.3d at 780).

In Russell's case, Juror 432 approached the bench after defense counsel asked the panel of prospective jurors if any of them had strong feelings about methamphetamine and, generally, whether they had friends or family who grapple with addiction. The recording of this first round of questioning between the court and Juror 432 is nearly inaudible. As such, we are left with only snippets of what was said as well as Juror 432's body language. Juror 432 appeared to state he had family members who struggled with alcohol addiction, but he could not be sure how or if that would affect his ability to judge Russell. During this first interaction, Juror 432 kept his head down for much of the questioning, though he did raise it to respond to questions from the trial court. When Juror 432 returned to his seat, defense counsel moved to

4

strike him for cause based upon his inability to say exactly how his experience with addiction would affect his ability to judge Russell. The trial court denied the motion on the basis that his general statements regarding drugs and addiction did not amount to a bias against Russell.

Although the court denied the motion, discussion of Juror 432 continued and the judge elected to call him back to the bench. This interaction remains difficult to understand but the recording is an improvement over the first round of questioning. This time the questioning focused on Juror 432's ability to consider the full range of punishments in the event Russell was found guilty:

> **Judge**: If you were to find the defendant is guilty, would you consider the full range of penalties, bringing the life experiences that you have to the table [inaudible] against drugs, as most people have, is there anything in your experience or anything that you have in your mind right now that would prevent you from being able to consider the full range of penalties if you were to believe that the defendant is guilty in this case?
>
> **Juror 432**: I don't have [inaudible], I really don't.
>
> **Judge**: Okay.
>
> **Juror 432**: You're saying, consider the full range.
>
> **Judge**: Yes.
>
> **Juror 432**: Being lenient, or being [inaudible]? Is that what you're asking me?
>
> **Judge**: Let me ask you kind of a hypothetical question: if you were to find someone guilty and I tell you that you have to sentence him anywhere from one year to five years, could you consider one year? Could you consider five years? Could you consider everything in between?
>
> **Juror 432**: I don't think I can answer that. I'm sorry. I really don't. I don't know anything about the trial so how could I...?

5

**Judge**: Have you ever been on a jury before?

**Juror 432**: Yeah.  I have been.  Once or twice.

**Judge**: Was it a criminal case?

**Juror 432**: No.  It wasn't.  At least I don't think.  I don't remember it.  I don't think it was a criminal case.

**Judge**: Okay.  [Inaudible] speculate what you might or might not do with regard to a situation, but I need to know that you can consider a high end and a low end if we ever get to that point.

**Juror 432**: Okay, I could consider it then.

**Judge**: I appreciate that.  I want to know that you can give it due consideration.

**Juror 432**: Yeah.

**Judge**: [Inaudible] think about you could do this, or you could do that, or anything in between.

**Juror 432**: Yes, I'd consider that.

**Judge**: Can you give it meaningful consideration?

**Juror 432**: Yeah, sure.

* * *

**Prosecutor**: I take it from your answer that you would need to know more information before you could commit to a penalty.

**Juror 432**: Yes.

**Prosecutor**: Just knowing that it's a drug case you will know more, you will know a lot more about the case, about the facts, about him, about- just, without knowing anything about the case can you give fair and meaningful consideration of the entire range of punishment before you choose and impose a particular sentence which would be based on the [inaudible] information you have right now.

**Juror 432**: I can try, I can try.

6

**Prosecutor**: You're not gonna automatically say "he oughta get the max" or "he oughta get the minimum."

**Juror 432**: I don't believe I would, no.

**Prosecutor**: You would consider whatever range this court instructs you to consider.

**Juror 432**: Yes.

**Prosecutor**: You could give fair and meaningful consideration to the entire range of punishments.

**Juror 432**: Yes.

**Defense counsel**: [Inaudible] consider [inaudible] addiction. Can you be sure that will not play a role in your decision making?

**Juror 432**: I can't be sure, but I can say I will try. I will try. Sorry.

* * *

**Judge**: [Juror 432], [inaudible] of the charges [inaudible], just knowing that that is the charge with the life experiences you do bring to the table, does that cause you [inaudible] your mind against this defendant?

**Juror 432**: No, not against the defendant.

During this interaction, Juror 432 largely looked toward the judge and answered clearly and deliberately. After Juror 432 left the bench, Russell's counsel again moved to strike the juror. The trial court denied the motion.

Considering the totality of the circumstances, we cannot say the trial court abused its discretion in declining to strike Juror 432 for cause. As to the initial questioning of Juror 432, the audio record is simply too unclear for us to make a meaningful assessment of what was said. The video record, however, shows little that would provide a reasonable ground to strike the juror. His

head was often facing down, but whether this was out of embarrassment about his family's drug history or out of an attempt to focus on what was being said—as the prosecutor presumably was doing—cannot be discerned. And whether his soft voice arose from shame or was a result of the recording setup that rendered almost everyone's voices inaudible is similarly unclear. We defer to the ruling of the trial court in the initial examination of Juror 432 because it is "in the best position to evaluate a juror's demeanor and answers during voir dire." *Hayes v. Commonwealth*, 320 S.W.3d 93, 100 (Ky. 2010).

While some of Juror 432's responses can be characterized as equivocal on his ability to consider the full range of possibilities in Russell's trial, we cannot say those equivocations stem from an inability to render a fair and impartial verdict such that the trial court abused its discretion in not striking the juror. We further find little in Juror 432's body language to suggest any level of discomfort above and beyond that usually suffered by laymen forced into a discussion at the bench. "Even if Juror [432] could be deemed a close call, the trial court is afforded great deference in evaluating a juror's ability to be fair and impartial[.]" *Hubers*, 617 S.W.3d at 766.

We find the situation here similar to that in *Sturgeon*. There, the defense was intended to be Extreme Emotional Disturbance ("EED") and prospective jurors were questioned on the concept. 521 S.W.3d at 195. Juror 500 stated during voir dire that he "rejected the notion of temporary insanity because he believed a person was either sane or not sane[.]" *Id.* However, when defense counsel questioned him, Juror 500 indicated that he could accept the legal

8

concept and apply it if so instructed. *Id.* Juror 500 nonetheless continued to vacillate on his ability to apply the EED concept. *Id.* The prosecutor requested a second round of questioning to rehabilitate the juror, and the trial court followed suit by asking additional questions to clarify Juror 500's stance. *Id.* On appeal, this Court found,

> Although significant portions of the voir dire record reflecting Juror 500's comments are hampered by inaudibility, and we have no specific findings of the trial court pertaining to Juror 500's responses, and despite his apparent vacillations, upon a review of his audible voir dire responses taken in their entirety, we find nothing in the record to establish a reasonable ground to doubt his qualifications, and we are afforded no reason to doubt that the trial court applied the appropriate standard.

*Id.* at 196. Accordingly, the Court affirmed the trial court's decision not to excuse Juror 500. *Id.*

Here, Juror 432's second interaction with the court was similar in character. Juror 432 admitted he would have difficulty not letting his feelings on drugs impact his judgment, but he was not certain what impact those feelings would have. After further questioning, Juror 432's answers became clearer and indicated he could conform his views to the requirements of the law, and render a fair and impartial verdict. We further observe Juror 432's responses suggest his equivocation could also have been the result of his lack of familiarity with the criminal justice process and not an inability to fairly apply the law. *See Hubers*, 617 S.W.3d at 767 (noting juror's equivocation could be the result of inexperience with the legal system where juror mentioned he had "never been in this situation before" with regard to jury duty).

9

While "in the event of uncertainty as to 'whether a prospective juror should be stricken for cause, the prospective juror should be stricken,'" *Simpson v. Commonwealth*, 653 S.W.3d 855, 865 (Ky. 2022) (quoting *Ordway*, 391 S.W.3d at 780), we remain cognizant of the responsibility the trial court bears in making decisions during voir dire particularly because the distinction between an impartial and partial juror "will often be anything but clear and will hinge to a large extent on the trial court's estimate of the potential juror's demeanor[.]" *Brown v. Commonwealth*, 313 S.W.3d 577, 599 (Ky. 2010). Accordingly, where Juror 432's demeanor was not "so substantially at odds that it is obvious the judge has abused his discretion in deciding the juror is unbiased," *Robinson v. Commonwealth*, 647 S.W.3d 136, 141 (Ky. 2022), we can find no abuse of discretion in denying Russell's motion to strike.

### B. Testimony on the street value of methamphetamine was proper.

Russell's second argument is that Detective Atwood impermissibly testified as to the street value of the drugs in Russell's possession. Because Russell did not object to this testimony at trial, we review this claim pursuant to RCr 10.26.[3] We will not reverse a conviction under the palpable error standard unless the "error is clear and plain, affects the substantial rights of a

---

[3] RCr 10.26 states,

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

party, and is more likely than other ordinary errors to affect the outcome of the case." *McCleery v. Commonwealth*, 410 S.W.3d 597, 605 (Ky. 2013).

The Commonwealth has commonly offered, and we have permitted, testimony as to the street value of narcotics to show a defendant was trafficking, rather than simply possessing, narcotics. *See, e.g., Burdell v. Commonwealth*, 990 S.W.2d 628, 631-32 (Ky. 1999) (finding testimony that cocaine seized had a street value of $10,000 was admissible to show intent to distribute); *P'Simer v. Commonwealth*, No. 2019-SC-0344-MR, 2020 WL 6390322, at *1-2 (Ky. Oct. 29, 2020) (evidence, which included the street value of narcotics, was sufficient to overcome directed verdict on count of trafficking in controlled substance); *White v. Commonwealth*, No. 2002-SC-0937-MR, 2004 WL 314624, at *2 (Ky. Feb. 19, 2004) (Commonwealth offered testimony as to the street value of crack cocaine to show intent to distribute crack cocaine). Thus, Detective Atwood was permitted to opine as to whether, in his experience, the drug evidence was consistent with trafficking and not personal use. *McGuire v. Commonwealth*, 595 S.W.3d 90, 95 (Ky. 2019). No error occurred in its admission, let alone palpable error.

### III. Conclusion

For the foregoing reasons, the Casey Circuit Court is affirmed in all respects.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jennifer Leigh Wade
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General